

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00051-CV

**IN THE MATTER OF THE MARRIAGE OF MILTON HAYES DAVID AND THERESA JARAMILLO DAVID**

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. DVC-19-07550, Honorable Stuart Messer, Presiding

January 31, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Through this appeal, we are asked to hold legal counsel responsible for failing to predict the consequences of bad weather. The attorney in question (W) represented Theresa David whom Milton David had sued for divorce. The trial court held a final hearing in the matter on December 22, 2020.[1] About six weeks later, W allegedly emailed a proposed judgment to Milton's attorney (C) during the afternoon of February 12, 2021.

---

[1] What occurred there is beyond our knowledge since the proceeding was not recorded.

Yet, C had closed her office at noon. Through the email, W supposedly informed C that the judgment would be sent to the trial court if he had not heard from her within five days.[2]

Inclement weather hit the area several days later, allegedly resulting in the loss of electricity to C's office. That loss also disrupted the operation of her computer server for several days, thereby preventing C from reading W's email within the five-day deadline. And, when the latter expired, W faxed a proposed judgment to the trial court in accordance with his email representation.[3] That resulted in the trial court signing the final judgment upon receipt, that is, February 17, 2021.

Having learned of the final judgment, Milton timely moved for new trial. The grounds upon which relief were sought implicated the inclement weather, its effect on her office and computer, and the purportedly "unreasonable" five-day deadline set by W. So too did C accuse W of engaging in an "ex parte" communication with the trial court. The allegedly improper communication consisted of W neglecting to contemporaneously fax her the document. A hearing on the motion was set for May 12, 2021.[4] The record is silent on whether the trial court actually convened it, though. What we discern from the record is that the motion ultimately was overruled by operation of law.

---

[2] Whether such an email was actually sent and whether it mentioned the five-day deadline is a matter we cannot verify for the missive appears nowhere in the appellate record. We merely assume the accuracy of Milton's allegations for purposes of this appeal.

[3] We again assume *arguendo* the verity of C's representation about this since a copy of neither the faxed cover page nor the judgment attached to it are part of the appellate record.

[4] The hearing date fell within the time period in which the trial court had plenary jurisdiction over the cause. This is so because a trial court retains plenary power to grant a new trial until thirty days after all timely filed motions for same are overruled by written order or operation of law. TEX. R. CIV. P. 329b(e). Since there was no written order issued either granting or denying the motion within seventy-five days of the judgment, the motion was overruled by operation of law on May 4, 2021. *See* TEX. R. CIV. P. 329b(c) (stating that if a motion for new trial is not ruled upon by written order signed within seventy-five days of the judgment, it is overruled by operation of law). Thus, the court's plenary jurisdiction extended to June 3, 2021.

Through his only appellate issue, Milton asserts that the trial court erred by its "acceptance of a final decree of divorce which had not been approved by the Petitioner's attorney and was sent to the court as a result of ex parte communication between the Respondent's attorney and the Court." We affirm for the following reasons.

First, we reject the proposition that W engaged in an ex parte communication. Texas Rule of Civil Procedure allows 1) "[a]ny party [to] prepare and submit a proposed judgment to the court for signature." TEX. R. CIV. P. 305. W did just that. So too did he comply with the obligation to serve the proposed judgment "on all other parties to the suit." *Id.* (imposing that obligation). That occurred twice. The first was through the February 12th email to which the judgment was attached. The second was through a fax of which C acknowledged receipt.

As for the allegation that error occurred because the judgment was not approved by C, Milton cited us to no authority restricting the proposed judgment contemplated by Rule 305 to only those to which the parties agree. The rule says nothing of agreement, and we opt not to rewrite it to accommodate Milton.

As for the insinuation throughout his brief regarding the supposed capriciousness of the five-day time period afforded C to review the judgment, we note that Rule 305 requires only service. It says nothing about affording prior notice of an intent to submit the judgment, much less about a time period within which that prior notice must be given.

As for the allegation about "misleading" the trial court, we find the contention, conclusory, confusing, and insupportable. It consists of Milton averring that "Theresa David's lawyer misled the Court by not telling the Court that Milton David did not oppose the proposed Decree of Divorce." Reading this as written, we interpret it as suggesting

3

W had the obligation to tell the trial court that C did not oppose the judgment. Yet, again, Milton cites us to no authority obligating one utilizing Rule 305 to represent whether or not the parties agree to the proposed judgment. Nor does anything of record indicate that Theresa suggested to the trial court that the proposal was one to which the parties agreed or disagreed. Given these circumstances, we again eschew the invitation to rewrite Rule 305 to say something that it does not.

As for the weather's intervention, neither Milton nor C explain how their opponents should have known about the impact of inclement weather upon C's office and computer system prior to the weather's onslaught. And, we opt not to impose a duty upon legal counsel to acquire a crystal ball enabling them to accurately predict the future. This is not to say that counsel would do well to cooperate with each other when unexpected circumstances arise impeding one's or the other's ability to perform an obligation. Such a laudable effort comports with the Texas Lawyer's Creed. But, like many other deficiencies in the record, nothing before us illustrates that either Theresa or W knew of the electrical outage or other impediments allegedly experienced by C.

Yet, even if they had, the avenue to protection lay in the direction of the trial court. It not only had the authority to grant a new trial but also set the matter for hearing. And, though the motion for new trial was overruled by operation of law, Milton said nothing about how the trial court allegedly abused its discretion in denying relief. He levied no objections to the property award or anything else in the decree. He said nothing about what he would have sought had he perused the decree before its execution. Instead, he focused his appellate effort on deriding W, not on tendering legal argument establishing error warranting reversal.

4

We overrule Milton's sole issue and affirm the trial court's final judgment. We also deny Theresa's request for "damages" under Texas Rule of Appellate Procedure 45. If for no other reason, she failed to provide us any factual basis upon which to calculate damages, and we see no reason to afford her time to enhance apparent animosities extant between the parties or legal counsel.

Brian Quinn
Chief Justice